UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JESSE R. MILTIER III,<br>      Plaintiff, | )<br>)<br>) |
| v. | )    NO: 2:12-CV-71 |
| | ) |
| HOLLY & HOLLY, PLLC, JASON L.<br>HOLLY and TRAVIS B. HOLLY,<br>individually,<br>      Defendants. | )<br>)<br>)<br>) |

### MEMORANDUM OPINION AND ORDER

This legal malpractice matter is before the Court to address the motion for summary judgment filed by the defendants Holly & Holly, PLLC, Jason Holly, and Travis B. Holly. [Doc. 24]. The plaintiff contends that the defendants are guilty of legal malpractice because they failed to move to amend the *ad damnum* to plaintiff's complaint in *Jesse Miltier v. Bank of America, et al.*, Docket No. C-9814 in Carter County Circuit Court, thus, causing the verdict in that case to be reduced by $550,000.00. The defendants contend that they are entitled to summary judgment based upon the statute of limitations, upon accord and satisfaction/ the *Rooker-Feldman* doctrine, and because the plaintiff does not have expert testimony in regard to the appropriate standard of care for attorneys such as Jason Holly and Travis B. Holly. The plaintiff has filed a response to this motion, [Doc. 33], and this matter has been briefed. On April 23, 2013, plaintiff's counsel was permitted

1

to withdraw, and in open court the plaintiff elected to proceed *pro se*. [Doc. 71].[1] The *pro se* plaintiff was given up to and including May 10, 2013, to supplement his response to the defendants' motion for summary judgment, and his response to the defendants' statement of undisputed material facts. However, the *pro se* plaintiff has not filed a supplement of any kind. This motion is now ripe for disposition.

Based upon the undisputed facts in this case and the affidavit of the plaintiff, the Court finds that the Motion for Summary Judgment filed by the defendants is well-taken as to the statue of limitations defense, the accord and satisfaction defense and because plaintiff has no expert testimony as to the applicable standard of care for attorneys. Therefore, the plaintiff's complaint will be dismissed.

**I. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir.2001).

---

[1] On October 18, 2012, after the Court denied plaintiff's motion to amend his disclosures to give late notice of an expert witness, plaintiff filed a motion to voluntarily dismiss his case without prejudice, which would potentially have allowed him to start over with his lawsuit with the necessary expert witness. At the hearing before the Magistrate Judge on April 23, 2013, the plaintiff "was given the opportunity to voluntarily dismiss his suit without prejudice but, even after being advised that a dismissal without prejudice would cure every current deficiency with the existing suit, he emphatically stated his desire to proceed on with the litigation" and withdraw his motion for a voluntary dismissal, [Doc. 71].

2

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir.2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.' " *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).

If the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he has the burden, however, the moving party is entitled to summary judgment as a matter of law. See *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir.1999). To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir.2002).

## II. UNDISPUTED FACTS

1. Jesse R. Miltier III (hereinafter "Plaintiff") is a former client of the defendants and currently resides in Colorado.

2. Holly & Holly is a professional limited liability company who formerly represented Mr. Miltier.

3. Jason Holly, an attorney, formerly represented Mr. Miltier.

4. Travis B. Holly, an attorney, formerly represented Mr. Miltier.

5. This is a legal malpractice action arising out of Plaintiff Miltier's underlying case against Bank of America.

6. Plaintiff's complaint in that case was drafted and filed by his attorneys at the time, the law firm of Cowan & Longstreet.

7. That firm included in the complaint a demand for compensatory damages in the amount of $200,000.00.

8. Defendants were later hired to take over representation of Miltier.

9. At trial, Miltier was able to prove special damages of $183,402.21.

10. Plaintiff never asked that Defendants seek leave to amend the complaint, so as to increase the amount demanded.

11. Defendants did seek to amend the complaint on one occasion, for a different reason. Leave to amend was denied by the trial judge.

12. The underlying case against Bank of America was tried on July 28-31, 2009. The jury returned a verdict in favor of Miltier, and identified the following damages on the special verdict form:

> a. $350k for out-of-pocket damages due to the foreclosure;
>
> b. $100k for out-of-pocket damages due to the litigation with Bank of America;
>
> c. $150k for emotional distress damages due to the foreclosure;
>
> d. $150k for emotional distress damages due to the litigation with Bank of America; and
>
> e. $300k for punitive damages.

13. In post-trial motions, the damages for items (b) and (d) were disallowed by the judge as a matter of law.

14. Item (a), expenses due to Bank of America's wrongful foreclosure, was reduced by the

court to the amount shown by evidence at trial, or $183,402.21.

15. Item (c), the award for emotional distress damages due to Bank of America's wrongful foreclosure, was reduced from the jury's award of $150,000, to the difference between the expenses proven and the amount of the *ad damnum* clause, *i.e.* $200,000 - $183,406.21 = $16,593.79.

16. The punitive damage award was upheld.

17. As a result, the remaining award was as follows:

    a. $183,406.21 for out-of-pocket damages due to the foreclosure;

    b. $16,593.79 for emotional distress damages due to the foreclosure; and

    c. $300k for punitive damages.

18. The reduction in damages for emotional distress due to the foreclosure (item (c) in # 9) was the only reduction in the jury's verdict due to the *ad damnum* clause.

19. The court's ruling in which it reduced Miltier's damages was issued from the bench on November 16, 2009, in open court, with Miltier present.

20. The court's ruling was also reduced to writing, filed on December 15, 2009, and promptly provided to Miltier.

21. This action was filed on February 28, 2012.

22. In Paragraph 10 of his affidavit, Travis Holly states:

> In sum, there are four factors that, in my opinion as a practicing and experienced litigation attorney in Tennessee, impacted the standard of care applicable to a decision whether to seek amendment of the *ad damnum* clause: (1) Miltier's knowledge that he was limited by the amount of the *ad damnum* clause and failure to suggest or request that it be changed; (2) his lack of interest in anything but punitive damages;2 (3) our inability to prove special damages in excess of $183,402.61; and (4) a judge who appeared disinclined to allow amendments. In light of these factors, it is my opinion that our conduct in not seeking amendment of the *ad damnum* complied with

5

the standard of care applicable to attorneys practicing law in Tennessee. It is my opinion that we did not, in any way, breach the standard of care applicable to our handling of the case.

23. In his affidavit, the plaintiff states:

13. When I received the written JUDGMENT of the Tennessee Court of Appeals, which stated Jesse Miltier had failed to modify the original Complaint and had failed to object to matters addressed at the November 16th, 2009, hearing, I realized HOLLY & HOLLY, PLLC, had failed to represent my best interest, for which they were being paid to do, as Attorneys of Law.

24. In 2011, attorney Mark Freeman, plaintiff's attorney in this lawsuit, began to represent Miltier in litigation over the issue of the attorney's fee that was due to defendants for their representation of Miltier in the underlying case against Bank of America.

25. Miltier objected to certain fees and expenses sought by the defendants. Miltier filed a document in opposition to the disputed fees and expenses entitled "Affidavit of Jesse Miltier in Opposition to Certain Portions of the Lien of Holly & Holly," in which he stated, in part:

• "[T]he Court of Appeals deemed that nothing was done to modify the original complaint, which resulted in my not receiving $550,000 awarded in compensatory damages."

• "[T]here was no noteworthy reason for the failure of Holly & Holly to modify the original complaint."

26. Pursuant to their fee agreement with Miltier, Holly & Holly were entitled to thirty percent of the $500,000 damage award for their work in the trial court, plus an additional five percent for their appellate work.

27. The dispute over attorney's fees and expenses was ultimately settled by Miltier and the defendants and their settlement agreement, in the form of an agreed order, was filed in the Carter

6

County Circuit Court on August 15, 2011. The defendants agreed to a reduction of their fee to thirty percent. The Agreed Order, signed by Miltier states: "This Order resolves any and all issues that were or could have been raised concerning the Petition to Enforce Attorney's Lien previously filed by this Petitioner." [2]

### III. PROCEDURAL BACKGROUND RE: EXPERT WITNESS

On May 9, 2012, this court filed its Scheduling Order,[Doc. 9], in which the court scheduled the trial of this case for May 21, 2013; set an expert disclosure deadline for the plaintiff of September 14, 2012, and one for the defendants for November 2, 2012; and set a dispositive motion deadline of November 15, 2012. Plaintiff's motion to extend the deadline for disclosing his expert witnesses was filed on October 12, 2012, nearly a month after his deadline for disclosing those experts had passed. [Doc.18]. In an order dated October 18, 2012, the Magistrate Judge denied the plaintiff's motion to extend his expert disclosure deadline. [Doc. 23]. The Magistrate Judge found that this extension would prejudice the defendants, because the dispositive motion deadline was November 15, 2012, and identifying those experts belatedly would deprive defendants of the opportunity to address those experts in any motion for summary judgment. The plaintiff filed an appeal of this order; however, the Magistrate Judge's order was affirmed by this Court. [Doc. 73].

On April 5, 2013, the plaintiff filed a motion for a continuance, in part, asserting that he

---

[2] In plaintiff's response to defendants' statement of undisputed facts in support of the motion for summary judgment, [Doc. 41], the plaintiff failed to submitted a "concise statement of any additional facts that the non-moving party contends are material and as to which the nonmoving party contends there exists a genuine issue to be tried, with each such disputed fact to be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute" as required by the Court's scheduling order in this case, [Doc. 9], and as required by the Court's Show Cause Order dated April 2, 2013. [Doc. 40].

7

needed additional time to retain an expert [3] to testify in this case. The plaintiff also asked that the expert disclosure deadline be extended as well as the trial date itself. On April 9, 2012, the Magistrate Judge denied the request for a continuance and the request for an extension of the expert disclosure deadline finding that the plaintiff had had ample opportunity to obtain an expert, and he had not done so. [Doc. 57]. The plaintiff filed an appeal of this order, and the Magistrate Judge's order was affirmed by this Court. [Doc. 74]. This Court noted that plaintiff's request to extend the expert disclosure deadline:

    1. Came more than seven (7) months after the original expert disclosure deadline for the plaintiff of September 14, 2012;

    2. Came more than six (6) months after his first request to extend the expert disclosure deadline was denied on October 18, 2012;

    3. Came more than six (6) months after defendant's motion for summary judgment was filed on October 18, 2012, alleging in part that summary judgment should be granted because the plaintiff had no expert to establish the standard of care; and

    4. Came less than seven (7) weeks before the trial in this case which was scheduled for May

---

[3] On April 27, 2013, plaintiff filed a *pro se* response, [Doc. 68], to defendants' motion in limine, [Doc. 45], to preclude plaintiff from introducing evidence that defendants breached the standard of care except through expert testimony. Plaintiff's response asserts that his now former attorney, Mark T. Freeman, had identified attorney James D. Kay, Jr., of Kay, Griffin, Eukema & Brothers, PLLC, to be an expert witness to testify as to the applicable standard of care.

Plaintiff filed an amended response, [Doc. 75], to the motion in limine on May 31, 2013. In that amended response, plaintiff asserted that he had traveled to Nashville, Tennessee, on May 13, 2013, to meet with attorney James D. Kay, Jr., "who stated he knew nothing of this case, and he had never been contacted by attorney Mark Freeman to consider acting as an expert witness in this case, [*Id*. at 2]. Plaintiff states that he was advised by Kay that "attorney Mark Freeman's negligence in the case is grounds for legal malpractice," [*Id*.]

These are very disturbing accusations which, unfortunately for plaintiff, must be presented through a legal malpractice or other claim against Mark Freeman in an appropriate court or through the filing of a complaint with the Tennessee Board of Professional Responsibility.

8

21, 2013.

## IV. ANALYSIS

### A. Statute of Limitations

In Tennessee, legal malpractice claims are subject to a one year statute of limitations and must be filed within one year from the time the cause of action accrues. Tenn. Code Ann. § 28-3-104(a)(2). When a cause of action accrues is determined by the discovery rule. *John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). Under the discovery rule, "a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Id*. (citing *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1988); *Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn. 1997)). In a legal malpractice case, the discovery rule is composed of two elements: (1) the plaintiff must suffer "legally cognizable damage," meaning an actual injury, as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known, or in the exercise of reasonable diligence should have known, that this injury was caused by the defendant's wrongful or negligent conduct. *Id*.

An actual injury occurs when a client suffers the loss of a legal right, remedy or interest, or the imposition of a liability. *Kohl*, 977 S.W.2d at 532. When some injury is known, a plaintiff may not delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff. *Id*. at 533. When any damages become apparent, the statute begins to run even though the amount may be small in comparison to the amount of damages eventually suffered. *Denley v. Smith*, 1989 WL 738 at *4 (Tenn. Ct. App. Jan. 9, 1989).

"The knowledge component of the discovery rule may be established by evidence

9

of actual or constructive knowledge of the injury." *Kohl*, 977 S.W.2d at 532 (citing *Carvel v. Bottoms*, 900 S.W.2d 23, 29 (Tenn. 1995)). The statute begins to run whenever the plaintiff becomes aware or reasonably should have become aware of ***facts*** sufficient to put a reasonable person on notice that an injury has been sustained as a result of the defendant's negligent or wrongful conduct. *Id*. There is no requirement that the plaintiff actually know the specific type of legal claim he or she has, or that the injury constituted a breach of the appropriate legal standard. *Id*. (citing *Shadrick*, 963 S.W.2d at 733)). Instead, "the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Id.* (quoting *Carvel*, 900 S.W.2d at 29). It is knowledge of facts sufficient to put a plaintiff on notice that "an injury has been sustained" that is crucial. *Id.* "The discovery rule was not meant to allow a party to delay filing his claim until after he has completed the process of discovering all the factors that effect its merits." *Burk v. RHA/Sullivan, Inc*., 2006 WL 2805197, at *6 (Tenn. Ct. App. Oct. 2, 2006).

    The essence of Miltier's complaint here is that defendants were negligent by failing to move to amend the *ad damnum* clause in his complaint, resulting in the reduction of the jury's verdict. *See* [Doc. 1]. Defendants argue that Miltier knew of his injury not later than November 16, 2009, the date of the state court's post-verdict ruling from the bench reducing the amount of the award, at least in part, on the basis of the *ad damnum* clause. *See* [Doc. 25-3 at 57, ll. 16-21; 58, ll. 160-265]. The court's ruling was reduced to writing, filed on December 19, 2009, and was promptly provided to Miltier by defendants.

    Miltier, on the other hand, argues that he did not suffer legally cognizable injury until he became aware "that defendants had committed legal malpractice" when he read the final

10

judgment of the Court of Appeals on his appeal of the trial court's verdict. *See Miltier v. Bank of America*, 2011 WL 1166746 (Tenn. Ct. App. March 30, 2011). Miltier argues, therefore, that the statute of limitation in this case began to run on the date of the Court of Appeals' order, not on the date of the trial court's oral or written order.

"[T]he most easily identifiable time when rights, interests and liabilities become fixed is when a court enters judgment. A judgment, after all, is 'an adjudication of the rights of the parties in respect to the claim[s] involved.'" *Cherry v. Williams*, 36 S.W.3d 78, 84 (Tenn. Ct. App. 2000) (quoting *Ward v. Kenner*, 37 S.W. 707, 709 (Tenn. Ch. App. 1896)). The entry of an adverse judgment or order is "the starter pistol for the running of the statute of limitations on litigation malpractice." *Id.* at 84-85 (citing *Laird v. Blacker*, 2 Cal. 4th 606, 7 Cal. Rpt. 2d 550, 828 P.2d 691, 696 (1992)). It is the court's judgment that decrees the loss of a right or remedy or imposes a legal liability. *Id*. Tennessee courts have repeatedly rejected Miltier's argument that there is no legally cognizable injury until an appeals court passes on the judgment of the trial court. In Tennessee, the statute of limitations is not tolled during the pendency of an appeal. *Cherry*, 36 S.W.3d at 85; *Carvel*, 900 S.W.2d at 29; *Brabson Mercantile, Inc. v. Crabtree*, 1 S.W.3d 648 (Tenn. Ct. App. 1999); *Wilkins v. Dodson, Parker, Shipley, Behm, & Seaborg*, 995 S.W.2d 575, 580-81 (Tenn. Ct. App. 1998).

The Court must agree with defendants on this issue. The failure to amend the *ad damnum* clause, or any other alleged negligence of the defendants resulting in a reduction in the jury's verdict, which forms the basis for the alleged negligent conduct occurred prior to the hearing on November 16, 2009. Miltier knew of this negligence no later than November 16, 2009, and his rights became fixed no later than the entry of the Court's order on December 19, 2009. Miltier's

11

cause of action thus accrued no later than December 19, 2009. This action, filed February 28, 2012, is clearly barred by the one year statute of limitations of Tennessee Code Annotated § 28-3-104(a)(2).

      **B.**      **Accord and Satisfaction**

According to Tennessee's long-standing definition of accord and satisfaction:

> An accord is an agreement whereby one of the parties undertakes to give or perform, and the other to accept in satisfaction of a claim, liquidated or in dispute, and arising either from the contract or from tort, something other than or different from what he is or considers himself entitled to; and a satisfaction is the execution of such agreement.

*Scipio v. Sony Music Entertainment, Inc.*, 173 Fed. App'x 385, 2006 WL 527062 (6th Cir. March 3, 2006) (quoting *Lytle v. Clopton*, 261 S.W. 664 (Tenn. 1994)). The party asserting the defense of accord and satisfaction has the burden of proving its existence by a preponderance of the evidence. *Ward v. Wilkinson*, 1999 WL 221843, at *1 (Tenn. Ct. App. April 19, 1999). "An accord and satisfaction is established by the intentions of the parties at the time of the transaction" and the issue is generally a question of fact unless the evidence is insufficient to submit the case claim to the jury. *Helms v. Weaver*, 770 S.W.2d 552, 553-54 (Tenn. Ct. App. 1989). It is clear to the Court that Miltier and the defendants in this case entered into an agreement, filed with the Court on August 25, 2011, which constituted an accord and satisfaction of both the defendant's claims for attorney's fees and Miltier's claims for legal malpractice.

In 2011, the defendants filed a petition in the Carter County Circuit Court to enforce their lien for attorney's fees against the $500,000 awarded to Miltier and paid by Bank of America. Miltier, represented by the same counsel who later filed the instant malpractice action, responded to the petition by filing his affidavit on August 11, 2011. In that affidavit, Miltier disputed certain

12

expenses claimed by the defendants and specifically objected to attorney's fees associated with the appeal "as there was **no** noteworthy reason for the failure of Holly & Holly to modify the original complaint." Among the expenses disputed by Miltier were those for expert witnesses related to proving emotional damages "when the Court of Appeals deemed that nothing was done to modify the original complaint, which resulted in my not receiving $550,000 awarded in compensatory damages." The parties then reached a settlement agreement as to defendants' petition. The agreement contained the following language: "This order resolves *any and all* issues that were or could have been raised concerning the Petition to Enforce Attorney's Lien previously filed by [Holly & Holly, PLLC]." (Emphasis added).

It is thus clear that Miltier disputed the defendants' right to receive attorney's fees pursuant to their contract with him on the basis that they had committed the very same acts of negligence about which he complains in this case. He also objected on the basis of certain expenses which form the basis of his damages calculations in this very case. At that time, August, 2011, Miltier was fully aware of all of his claims of malpractice, including any he might have been alerted to by the Court of Appeals opinion on March 30, 2011. In other words, Miltier raised the alleged legal malpractice of the defendants as a defense to their request for attorneys' fees and subsequently entered into an agreement which resolved "any and all" of the issues between these parties "that were or could have been raised." The language is clear. All means all, and defendants are entitled to summary judgment on this issue as well.

### C.    Lack of Expert Proof of Negligence

To establish a legal malpractice claim under Tennessee law, the plaintiff must prove:

> (1) that the accused attorney owed a duty to the plaintiff,
> (2) that the attorney breached that duty,

13

> (3) that the plaintiff suffered damages,
> (4) that the breach was the cause in fact of the plaintiff's damages, and
> (5) that the attorney's negligence was the proximate, or legal, cause of the plaintiff's damages.

*Gibson v. Trant*, 58 S.W.3d 103, 108 (Tenn. 2001). It is well-settled law that, "[i]n a legal malpractice action, expert testimony is required to establish negligence and proximate cause unless the alleged malpractice is within the common knowledge of laymen." *Rose v. Welch,* 115 S.W.3d 478, 484 (Tenn.Ct.App.2003). Only in cases involving "clear and palpable negligence" can legal malpractice be determined without expert testimony. *Id.* at 484 (quoting *Cleckner v. Dale,* 719 S.W.2d 535, 540 (Tenn.Ct.App.1986)). The Tennessee courts have further held that attorneys' motions practice is "beyond the common knowledge of laymen." *Hutter v. Cohen,* 55 S.W.3d 571, 575 (Tenn.Ct.App.2001). In this case, plaintiff's own affidavit establishes that the defendants' failure to move to amend the *ad damnum* to his state court complaint was "beyond the common knowledge of laymen" because he states he did not know until he received the Tennessee Court of Appeals opinion in his case that the defendants were not representing his "best interests." Therefore, under *Hutter,* the plaintiff must produce an expert to establish the standard of care for the defendants' motions practice.

In addition, if a defendant-attorney presents expert proof that he or she did not breach the duty of care, the plaintiff-client must present rebuttal expert proof that a breach of care did occur in order to create a genuine issue of material fact. *Bursack v. Wilson,* 982 S.W.2d 341, 343–45 (Tenn.Ct.App.1998). The defendants in this case have presented expert proof that they did not breach the duty of care by virtue of the affidavit of defendant Travis Holly. Therefore, the plaintiff must present rebuttal expert proof that a breach of care did occur in order to create a genuine issue

14

of material fact. The plaintiff has failed to do so.

Plaintiff's failure to obtain an expert in a timely manner and failure to seek an extension of time to obtain an expert in a timely manner meant that he would be unable to establish the standard of care, and ultimately, that the defendants committed legal malpractice. Under these circumstances, summary judgment must be granted because plaintiff cannot prove essential elements of his cause of action, that is, negligence and proximate cause. Thus, the plaintiff has failed to "go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial."

## V.  CONCLUSION

Based upon the foregoing reasons, it is hereby **ORDERED** that the Motion for Summary Judgment filed by the defendants is **GRANTED**, [Doc. 24], and the plaintiff's complaint is **DISMISSED**.

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
